<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JONATHAN O. ROJAS,

               *Plaintiff,*

     v.

UNITED STATES OF AMERICA, EDISON
JOB CORPS CENTER, JOHN/JANE ROE,
JOHN/JANE DOE 1-100, ABC CORPORATION
1-100, and XYZ PARTNERSHIP 1-100,
representing one or more fictitious individuals or
entities, individually, jointly, and severally,
JOHN/JANE DOE 101-200, ABC
CORPORATION 101-200, and XYZ
PARTNERSHIP 101-200, representing one or
more fictitious persons or entities consisting of
Directors, Officers, Principals, Partners, Boards,
Board Members Or Representatives, or Agents,
individually, jointly, and severally,

               *Defendants.*

Civil No.: 24-cv-11516 (KSH) (AME)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Plaintiff Jonathan O. Rojas alleges he was injured at the Edison Job Corps Center in Edison, New Jersey, when an employee of one or more of the defendants released a dock plate from his truck in a loading area and the dock plate hit his leg.  He has sued the United States for negligence, along with the Edison Job Corps Center and a host of fictious defendants.  He also filed a separate lawsuit, Civil Action No. 24-7298, against Management and Training Corporation ("MTC"), which assertedly manages the site; that action is ongoing. The United States has moved to dismiss the present action for lack of subject matter jurisdiction, arguing that the independent contractor and/or discretionary function exceptions to the Federal Tort Claims

1

Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671-80, apply.  The motion is fully briefed and is decided without oral argument.

## II.     Background

The complaint in this action alleges as follows.  Edison Job Corps Center is located in Edison, New Jersey.  (D.E. 1, Compl. ¶ 9.)[1]  According to Rojas, the United States "owned, operated, inspected, maintained, managed, and/or controlled" the Job Corps property, and Edison Job Corps Center "owned, operated, inspected, maintained, managed, supervised and/or controlled persons, members, licensees, employees, students, agents and/or supervisors" on the property.  (*Id.* ¶¶ 9-10.)  On July 6, 2022, Rojas, working as a driver for Estes Express Lines, parked his truck in the delivery area at the Center.  (*Id.* ¶ 14.)  He was standing near the rear of his truck when an individual, identified in the complaint by a fictitious name and as "a person, member, licensee, employee, contractor, student, agent and/or supervisor" of either the United States, the Edison Job Corps Center, or another fictitiously-named defendant, "operate[d] without permission of [Rojas], a leaver [sic] which released a dock plate on [the] vehicle causing same to eject and strike [Rojas's] leg," injuring him.  (*Id.* ¶¶ 11, 14, 17.)

On June 26, 2024, Rojas sued the United States, Edison Job Corps Center, and MTC.  He described MTC as "a contractor that manages United States Job Corps Centers" and that is "contracted to manage" Edison Job Corps Center.  (Civ. Action No. 24-7298, D.E. 1, Compl. ¶ 11.)  MTC answered and cross-claimed against its codefendants for contribution and indemnification.  (Civ. Action No. 24-7298, D.E. 7.)  On September 10, 2024, Rojas voluntarily dismissed his claims against the United States, and on October 15, 2024, he dismissed his claims against Edison Job Corps Center (Civ. Action No. 24-7298, D.E. 11, 14), as he had not yet

---

[1] Docket entry citations refer to entries on the docket of this action, unless otherwise noted.

exhausted his administrative remedies under the FTCA (D.E. 8-1, Moving Br. 5; D.E. 11, Opp. Br. 2 n.1; D.E. 11-1, Declaration of Alexandrea Jacinto, Esq. ("Jacinto Decl.") ¶ 4).  That action proceeded to discovery and is presently scheduled for mediation.

On December 31, 2024, Rojas filed the complaint in the instant action, which names the United States, Edison Job Corps Center, and fictious defendants.  (D.E. 1.)  The complaint asserts claims under the FTCA for negligence, gross negligence, and recklessness (count 1), agency/*respondeat superior* (count 2), and negligent hiring, training, supervision and retention (count 3).  The complaint also alleges negligence by fictitiously-named defendants (count 4).

The United States moved to dismiss based on the independent contractor and/or discretionary function exceptions to the FTCA.  (D.E. 8-1, Moving Br.; D.E. 16, Reply Br.)[2]  In support, it offers the Declaration of Clarissa H. Brown, Division Chief, Job Corps Operations, Boston Region, who works for the Employment and Training Administration, Office of Job Corps, within the U.S. Department of Labor ("DOL").  (D.E. 8-2, Brown Decl.)  Brown attaches what she describes as a contract between the DOL and MTC "for the operation and management of the Edison Job Corps Center."  (Brown Decl. ¶ 3 & Ex. A.)  She also attaches an "incident report from MTC regarding a July 6, 2022 incident involving" Rojas, along with "accompanying communications."  (*Id.* ¶ 6 & Ex. B.)  The United States' theory is that the contract required MTC to manage the day-to-day operations and maintenance of the Job Corps center, and that the

---

[2]    The United States also argues, and Rojas has not contested, that Edison Job Corps Center should be dismissed because only the United States is a proper defendant in an FTCA action.  As that is the case, *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008), counts 1, 2, and 3 are dismissed to the extent they are asserted against Edison Job Corps Center.

On the same grounds, count 4 cannot proceed.  As far as the Court can discern, that claim appears to be pleaded against fictitious defendants that would either be employees or agents of MTC or the United States.  The FTCA only provides a cause of action against the United States, not against its employees.  And with respect to MTC employees or agents, any such claims are or would be asserted in the other pending action, not in this action brought under the FTCA.

alleged individual tortfeasor worked for MTC, not the government.  Under those circumstances, the theory goes, the independent contractor exception to the FTCA applies and defeats the negligence and vicarious liability claims (counts 1and 2).  As to the failure to supervise claim (count 3), the United States contends that no facts are alleged to support it, and that the discretionary function exception to the FTCA would apply in any event.

Rojas counters that the motion is premature because it is based on factual information that he has not had an opportunity to probe in discovery and the exceptions to the FTCA cannot be applied to the factual record as it currently stands.  (D.E. 11, Opp. Br.; D.E. 11-1, Jacinto Decl.)  On the independent contractor exception, Rojas argues that Brown's declaration attaching MTC's contract for the Edison Job Corps Center does not speak to actual knowledge of how the site operates, as opposed to how the contract states it should operate.  (D.E. 11, Opp. Br. 7; *see also id.* at 8.)  And although the United States zeroes in on one specific employee in the incident report and his apparent employment for MTC (not the United States), the incident report identifies other people potentially involved who appear to be employees of Job Corps (and thus the United States).  (*Id.* at 9-10.)  As to the discretionary function exception, Rojas argues that "[w]ithout the benefit of jurisdictional discovery, it is impossible for the court to engage in the fact-sensitive inquiry required to determine the applicability of the discretionary function exemption," and it is the government's burden to demonstrate its applicability.  (*Id.* at 11-12.)

In reply, the United States argues that "[t]he contract between MTC and the Government, the emails and incident report the Government attached, and the agency declaration" allow the Court to conclude that the two FTCA exceptions apply, without the need for further discovery. (D.E. 16, Reply Br. 1-2.)

4

After the motion was fully briefed, Magistrate Judge Espinosa scheduled a Rule 16 conference (D.E. 17), which was adjourned due to the temporary government shutdown that resulted in a stay of certain civil cases in October 2025, including this one. (*See* D.E. 18, 19, 20.) Although that stay has long since ended, neither party has taken any action to resume litigating this action; Rojas and MTC have, however, continued litigating the earlier-filed action.

## III. Standard of Review

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack on subject matter jurisdiction does not dispute the facts that the complaint alleges; it assumes them to be true. *Id.* The assertion, in this type of challenge, is that the facts alleged do not invoke the court's subject matter jurisdiction because they, for example, do "not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Aichele*, 757 F.3d at 358). When a motion raises a factual challenge, the court can "weigh and consider evidence outside the pleadings," and the plaintiff bears the burden to prove the existence of subject matter jurisdiction and his or her factual allegations are not afforded a presumption of truthfulness. *Id.* (cleaned up). In scenarios where the factual challenge to jurisdiction "involves 'intertwined' issues of both jurisdiction and merits," the plaintiff need not provide proof that would satisfy a trier of fact at trial; the burden is

less demanding than that. *DeMolick v. United States*, 2023 WL 3562979, at \*2 (3d Cir. May 19, 2023) (in such scenarios, "district court must require 'less of a factual showing than would be required to succeed at trial' to establish jurisdiction" (quoting *CNA*, 535 F.3d at 145)).

Here, the motion mounts a factual challenge to jurisdiction; the United States has offered the Brown Declaration, which asserts (contrary to the complaint allegations) that MTC, not the United States, managed and operated the Edison Job Corps Center.[3]

### B. The FTCA

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). The FTCA is a limited waiver of that immunity. *Pellegrino v. United States of Am. Transportation Sec. Admin.*, 937 F.3d 164, 169 (3d Cir. 2019) (en banc). Relevant here, it "waives the federal government's sovereign immunity for the negligent actions of its employees." *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023). The statute provides that the district courts have

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . ., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). *See also* 28 U.S.C. § 2674.

---

[3] There is authority within the Third Circuit suggesting that a factual challenge to subject matter jurisdiction cannot precede the filing of an answer; other authority applies no such limitation. The latter position is better supported by the rules and the limits of this Court's jurisdiction. *See Mohammadi v. United States*, 2025 WL 2100397, at \*4 n.8 (D.N.J. July 25, 2025) (Bumb, J.) (discussing both positions and agreeing with latter one). Moreover, Rojas argues that the motion is premature because the factual record is insufficiently developed, not because an answer hasn't been filed yet.

There are exceptions to the FTCA's immunity waiver. One of these is the independent-contractor exception, which derives from 28 U.S.C. § 2671. That statute defines "employee of the government" (a term appearing in § 1346(b)(1), *supra*), to include "officers or employees of any federal agency"; a "federal agency" does not include "any contractor with the United States." 28 U.S.C. § 2671; *see also E.D. v. United States*, 764 F. App'x 169, 172 (3d Cir. 2019) (discussing exception).

To assess whether an employee is working for a federal agency or for a contractor, the Court examines whether "day-to-day operations are supervised by the Federal Government." *E.D.*, 764 F. App'x at 172 (quoting *United States v. Orleans*, 425 U.S. 807, 815 (1976)). The "power of the Federal Government to control the detailed physical performance of the contractor" distinguishes a federal agency from a contractor. *Id.* (cleaned up).

A second exception to the FTCA applies to certain discretionary government functions. This exception comes from 28 U.S.C. § 2680(a), which provides that the FTCA's immunity waiver does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The discretionary function exception represents a boundary between "'Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Merando*, 517 F.3d at 164 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). It is the government's burden to show that the exception applies, *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012), and the test begins with identifying

the specific conduct challenged, *id.* at 332.  The Court then asks (1) whether the conduct

"involves an 'element of judgment or choice,'" and (2) if it does, whether "that judgment is of

the kind that the discretionary function exception was designed to shield."  *Merando*, 517 F.3d at

164-65 (cleaned up).

## IV.     Discussion

The United States seeks dismissal of the first two counts of the complaint on the basis

that the acts of negligence alleged in the complaint were committed by an employee of MTC,

which is assertedly an independent contractor.  In support, it cites provisions of MTC's contract

to operate the site and an accompanying handbook incorporated into the contract:  The contract

requires the "Contractor" (*i.e.*, MTC) to "operate the . . . Job Corps Center" and to "provide

material, services, and all necessary personnel" to do so.  (Brown Decl., Ex. A, Contract, at 8,

14.)   MTC must "[c]onduct program operations in a setting that is clean, well maintained, and

safe," and "[p]rovide basic health care, counseling, and other support services as required by the

PRH" (a term discussed immediately below).  (*Id.* at 14.)

The contract incorporates the requirements of the Department of Labor's Policy and

Requirements Handbook ("PRH") (*id.* at 13),[4] and from that handbook, the United States cites

requirements that MTC have "a sufficient staff of qualified personnel and subcontractors for

preventive and corrective maintenance and cleaning of facilities, grounds, and equipment,"

maintenance personnel available around the clock, the ability to "handle emergency problems

beyond the scope of maintenance personnel," and a maintenance staff with "the skills, training,

---

[4] The United States provides a public link to this handbook:
https://prh.jobcorps.gov/Management%20Services/5.8%20Facility%20Operations%20and%20M
aintenance/

8

and experience required to perform the required preventive and corrective maintenance activities." (D.E. 8-1, Moving Br. 3-4 (citing PRH, Section 5.8, R3(c)); *see also id.* at 12.)

As the United States observes, courts can look to contract language to assess the government's degree of control.[5]  But what it cites from the contract here—essentially, that MTC was required to operate the Edison Job Corps Center and have qualified staff available around the clock for issues routine and non-routine—does not, without more, compel the conclusion that the United States lacked the power to control MTC's detailed physical performance or that the federal government was uninvolved in supervising day-to-day operations.  Other contract language suggests otherwise.  For example, immediately preceding the PRH's requirements about maintenance personnel is a subsection requiring MTC to use a government-provided system to "plan[], schedul[e], track[], and document[] all preventive and corrective maintenance work activities for all facilities and building systems." (PRH, Section 5.8, R3(b)(1).) Additionally, MTC is mandated to "timely report and manage significant incidents as set forth in the PRH" and stipulates that these are "material requirements of this contract." (Brown Decl., Ex. A, at 31 (Contract § G.13).)

The United States mentions the latter section in its moving brief not to demonstrate MTC's operational control, but apparently to introduce the incident report attached to the Brown Declaration.  (D.E. 8-1, Moving Br. 4-5.)  In its reply, it suggests for the first time that indemnification language in this section is evidence of MTC's "broad responsibility for maintenance and operations" at the site.  (D.E. 16, Reply Br. 6-7.)  But in context, that language is more nuanced.  The relevant sentence reads: "The failure to comply with [the significant

---

[5] (*See* D.E. 16, Reply Br. 4 (citing *Fitch v. Valor Healthcare*, 2025 WL 696907, at *2 (W.D. Pa. Mar. 3, 2025), and *Gibson v. United States*, 567 F.2d 1237, 1241 (3d Cir. 1977)).

incident reporting and management requirements] also may give rise to liability to damages incurred by third parties, in which case the contractor agrees to indemnify and hold harmless the government against any such claims and related costs." (Brown Decl., Ex. A, at 31 (Contract § G.13).) In other words, if MTC does not follow *reporting* protocols, it may be on the hook to indemnify the government. This can be read to promote, rather than relinquish, an oversight role for the government. *Cf. Dalessio v. U.S. Dep't of Hous. & Urb. Dev.*, 528 F. Supp. 3d 341, 347 (E.D. Pa. 2021) (contract required contractor to maintain property and expressly made it liable for failure to inspect or maintain).

Ultimately, that may turn out not to be the case. The facts may show that the United States' role was only a "broad, supervisory" one, or that it merely had the "*potential* to exercise detailed control" over MTC"; in either case, the independent contractor exception would properly apply. *Gibson*, 567 F.2d at 1242. But what is presently before the Court makes that questionable; and because whether MTC is an independent contractor implicates both jurisdiction and the merits, the ambiguity supports allowing discovery rather than prematurely dismissing Rojas's claims. *Mohammadi*, 2025 WL 2100397, at *4, 6-8; *Irizarry v. United States*, 2019 WL 4785738, at *6 (D.N.J. Sept. 30, 2019) (Salas, J.); *see also Laoye v. United States*, 2023 WL 2263670, at *6 (D.N.J. Feb. 28, 2023) (Castner, J.) (declining to dismiss based on independent contractor exception; "[t]he United States can renew this argument at the summary judgment stage should it choose to do so").

Other documentation in the motion record supports the same conclusion. From the incident report and related emails attached to Brown's declaration, the United States concludes that an individual named Wilfredo Resto released the dock plate. (D.E. 8-2, Brown Decl. ¶ 6 & Ex. B.) Because the Department of Labor "does not employ any facility maintenance staff at the

Job Corps Center" and an employee directory lists Resto as a maintenance technician in the Job Corps facility maintenance department, the government concludes that Resto is not a federal employee. (Brown Decl. ¶¶ 8-9.) The argument, then, is that because Resto works for MTC, and MTC is an independent contractor, the individual tortfeasor was not an "employee of the government" and the FTCA has not waived the government's immunity for his actions.

The nexus of this jurisdictional argument to the merits of the case is apparent, and Rojas's opposition brief illustrates why: the incident report and emails also allude to the potential involvement of a property clerk in directing both Rojas and Resto. (*See* Brown Decl., Ex. B; D.E. 11, Opp. Br. 9-10.) The details of that involvement have not been fleshed out, nor is it apparent whether MTC or the government employs the clerk. Accepting the United States' argument would require the Court to put such questions aside and adjudicate, on a motion to dismiss, that Resto was in fact negligent, an MTC employee, and the only tortfeasor, and that MTC was in fact an independent contractor. Driving all of that is the contract language the United States relies on (*see* D.E. 16, Reply Br. 6-7), which as noted earlier is equivocal on the question of governmental control. The Court will not adjudicate the merits at this stage, and as such will deny the United States' motion to dismiss counts 1 and 2 based on the independent contractor exception, without prejudice to renewal on an appropriate factual record.

Count 3, however, is different. This claim is titled "Negligent Hiring, Training, Supervision and Retention" and is asserted against the United States. Rojas offers no factual assertions, only conclusory legal statements, in support. FTCA claims have six elements: the claim must be asserted

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a

11

> private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Brownback v. King*, 592 U.S. 209, 212 (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)). Practically speaking, the sixth element requires an FTCA plaintiff to plausibly plead the underlying state law claim, and failure to do so amounts to a jurisdictional defect. *See id.* at 217-28. Rojas argues the discretionary function exception to the FTCA cannot be applied to bar this claim because discovery is necessary to flesh out the factual parameters. Indeed, the initial requirement for applying that exception is to precisely identify the challenged conduct. *S.R.P.*, 676 F.3d at 332. But the impediment to doing that for this claim is a result of the complaint's failure to articulate what the government allegedly did or didn't do with respect to hiring or supervising or training and how that conduct fell short of an applicable standard of care. Rojas's opposition brief suggests some areas in which discovery may be helpful, but discovery is not intended to be a tool for identifying or building a cause of action. *DeMolick*, 2023 WL 3562979, at *4 ("[A] plaintiff must plausibly allege subject matter jurisdiction before it can seek discovery to prove it."). Count 3 will be dismissed without prejudice.

It appears the parties previously discussed consolidation of this matter with Civ. Action No. 24-7298; the reply filed by the United States argues, however, that consolidation "is not necessary unless [Rojas's] claims survive the Government's motion to dismiss." (D.E. 16, Reply Br. 2-3.) In light of this ruling, consolidation remains a live question. The parties shall appear before Magistrate Judge Espinosa on a date to be set by him to address (a) consolidation, and (b) if Rojas chooses to pursue amendment of count 3, a proposed schedule relative to that motion practice.

**V.      Conclusion**

The motion to dismiss is granted in part and denied in part.  An appropriate order will issue.

/s/ Katharine S. Hayden

Date: March 16, 2026                                    Katharine S. Hayden, U.S.D.J.